The Life Insurance Company of Virginia *v.*
Sluss, Administrator.

[No. 15,806. Filed December 15, 1937. Rehearing denied February
17, 1938. Transfer denied May 10, 1938.]

*Rochford & Rochford* and *Julius Travis,* for appellant.

*Ellis E. Sluss* and *O. B. Hanger,* for appellee.

*Baker & Daniels, Gavin & Gavin, Miller, Miller & Bredell, Thompson & Rabb, Samuel Dowden, George L. Denny* and *Robert A. Adams,* amici curiae.

KIME, J.—The appellant issued a policy of life insurance, at a semi-annual premium of $15.46 to Louise Irma Pfisterer, who was born December 26, 1890, and who was, at the time of the issuance of this policy on November 24, 1925, thirty-five years of age. The premiums were paid for five years and on November 24, 1930, the policy lapsed on account of non-payment of the premium then due. The insured died on March 1, 1934, and her brother, who was the beneficiary named in the policy, instituted this suit and upon his death the administrator of his estate was substituted as party plaintiff and is the appellee here.

The complaint was in two paragraphs which were answered in general denial. The cause was tried by the court on an agreed statement of facts and the finding was for the appellee and a judgment was rendered in his favor in the sum of $1,090.00. The appellant's motion for a new trial, assigning as grounds therefor that the decision was not sustained by sufficient evidence and that it was contrary to law, was overruled and that is the error assigned.

The policy, among other things, contained the following: "If this policy shall lapse for the non-payment of any premium after premiums have been paid for at least three full years of insurance and there is no indebtedness to the company on account of this policy, the company will grant one of the

following options: . . ." The three statutory options were here set out. Since the policy holder did not elect, upon the lapse, to avail herself of any one of the options under the statute the insured automatically became entitled to extended insurance which was one of the options given in the policy. *Equitable Life Ins. Co. of Iowa* v. *Horner et al.* (1932), 97 Ind. App. 347, 182 N. E. 463.

The policy further provided as to the automatic extended insurance that "The Company, without any action on the part of the insured, will carry the face amount of this policy as non-participating extended insurance, from the date to which premiums have been paid for the term shown in the extended insurance column in the table of surrender values opposite the number of full years for which premiums have been paid: . . .

"In case there is any indebtedness on account of this policy, *the insurance payable under the Extended Insurance Option shall be* THE FACE AMOUNT OF THIS POLICY, LESS THE AMOUNT OF SUCH INDEBTEDNESS *and the term for which such insurance shall be extended shall be for such time as* THE CASH SURRENDER VALUE *of this Policy herein specified* AFTER DEDUCTING SUCH INDEBTEDNESS, *will carry the modified amount according to the Table of Net Single Premiums for Term Insurance, computed by the American Experience Table of Mortality with three and one-half per cent. interest;* the insurance payable under the Paid-Up Life Policy shall be reduced in the same proportion as such indebtedness bears to the Cash Surrender Value. If a cash surrender value is chosen, the said indebtedness shall be deducted from the cash value that might otherwise be claimable, and the balance, if any, paid in cash." (Our italics.)

Immediately after the above provisions of the policy,

on the same page, is the table referred to, which is as follows, to wit:

| "At end of | Cash or loan value per $1,000 insurance | Paid up policy per $1,000 insurance | Extended Insurance years | months |
|---|---|---|---|---|
| 3rd yr. | $49 | $150 | 5 | 8 |
| 4th yr. | 70 | 200 | 8 | 2 |
| 5th yr. | 95 | 250 | 10 | 10 |

. . . ."

This table contained the values under the headings shown down to the twentieth year as by statute required, following which was this further clause: "This policy is valued upon the American Experience Table of Mortality with three and one-half per cent. interest. The values in the above Table are equal to the full reserve according to the foregoing standard less a decreasing surrender charge which in no case exceeds $2\frac{1}{2}\%$ of the amount of insurance. Values for years not covered by the above table will be equal to the full reserve."

The insured had secured a loan of $70.00 on this policy and this was unpaid at the time the policy lapsed. Chap. 195 of the Acts of 1925 provides as follows: "From and after July 1, 1909, no policy of life insurance shall be issued or delivered in this state unless same shall provide the following:

"(7) A Table showing in figures the loan values and the cash, paid up and extended insurance options upon surrender, or available under the policy each year, upon default in premium payment, during at least the first twenty years of the policy, which values shall be equal to the full reserve on the policy, less not to exceed two and one-half per centum of the sum insured; following this table there shall be a clause specifying the mortality table and rate of interest adopted for computing the reserve and specifying the basis for the values and

options after the period covered by the table. This provision shall not apply to term policies nor to any form of paid up insurance issued or granted in exchange for lapsed or surrendered policies. . . .

"(10) That in event of default of premium payment after premiums have been paid for not less than three years, the insured shall be entitled to the extended insurance shown in the table of values and options for the end of the last year for which full annual premiums shall have been paid; *Provided,* That if there be any unpaid note given for a premium or any indebtedness to the company on account of or secured by the policy, the amount of extended insurance shall be reduced in the ratio of such indebtedness to the net value of such extended insurance; or, *the amount of such indebtedness shall be deducted from the net value of the extended insurance otherwise available and the balance shall be applied as a net single premium to purchase extended insurance for an amount equal either* to the face of *the policy or to the face of the policy less the amount of such indebtedness:* and, *Provided,* That the policy may be surrendered to the company at its home office within one month from the due date of the unpaid premium for a specified cash value at least equal to the sum which would otherwise be available for the purchase of extended insurance as aforesaid: and, *Provided* further, That the company may defer payment for not more than six months after the application therefor is made. This provision shall not be required in term insurance of twenty years or less." (Our italics.)

Shortly after the death of the insured the beneficiary demanded payment of the face of the policy and the appellant denied liability and refused payment, following which this action was commenced.

Appellant and appellee agree and we concur that there are only two questions presented here and these

are: (1) Are the provisions of the policy valid which authorize the insurer to make a deduction of not to exceed two and one-half per cent from the full reserve on the policy in order to ascertain the cash surrender value in computing the amount available with which to purchase the extended insurance upon the lapse by default; and (2) are the provisions of the policy valid which allow a deduction for an unpaid debt, secured by the policy, at the lapse date from the cash reserve and also from the face of the policy.

The statute provides that in all policies there must be a table which shows in figures the loan value, the cash value, the paid up insurance value and extended insurance value that are available to the insured in the event the policy holder desires to either surrender the policy and voluntarily take one of the above mentioned options or that is available to the policy holder in the event of a default in the payment of the premium at the end of certain policy years to and including the twentieth, "which values shall be according to the full reserve on the policy less not to exceed two and one-half per centum of the sum insured," following which there shall be a clause specifying the mortality table and rate of interest adopted for computing the reserve and specifying the basis for the values and options after the period covered by the table. This means that the insurer must set forth in this table figures which are equal to the full reserve of the policy from which the insurer has the right to deduct a maximum of two and one-half per centum. In the instant case the full reserve for the policy at the lapse date was $105.51 and in the table set forth the insurer deducted not the two and one-half per centum that could have been deducted but $10.51 and stated in the table that for that particular year the policy had a cash value of $95.00. Since the insured had borrowed $70.00

this amount must be deducted from the $95.00, which leaves available the sum of $25.00 with which to pur-· chase extended insurance. The appellee contends that the insurer did not have the right to deduct the sum of $10.51 but the statute is unambiguous and this right is specifically given appellant thereunder.

The appellee contends that the last sentence of section 7 of the Acts of 1925, *supra,* prohibits the application of the foregoing part of said clause to this policy. In other words it is asserted that this is either a term policy or a form of paid-up insurance issued in exchange for lapsed policy. Our interpretation of this last sentence is that it has no application to the policy in question. This was not a term policy nor any other form of paid-up insurance issued for a lapsed or surrendered policy as contemplated by the statute. The policy here in question provides that within a certain period after the lapse insured had the option of . securing one of three kinds of insurance but she did not avail herself of this provision and now no benefit can be had in the absence of such election.

The statute, as shown above, also provides that when a default occurs after the three years that there shall be available to the insured a certain definite sum; that in the event there is an unpaid indebtedness secured by the policy that the amount of extended insurance shall be reduced in a certain manner; that· the insurer may deduct the amount of such indebtedness from the net value of the existing insurance; that the balance of such amount shall be applied as the net single premium for extended insurance in an amount equal either to the face of the policy or to the face of the policy less the amount of such indebtedness. Here the insurer elected to deduct the amount of the indebtedness from the net value of the extended insurance and applied it as a net single premium for the face of the policy less

the amount of such indebtedness, which they had the right to do both under the statute and under their policy, as the policy provided that the insurance payable in the event of an unpaid indebtedness shall be the face of the policy less the amount of such indebtedness and the term shall be for such time as that value would buy after deducting such indebtedness according to the table of net single premiums for term insurance contemplated by the American Experience Table of Mortality with three and one-half per cent interest. Upon the default the insurer credited the insured with two years and eleven months of extended insurance to which she was entitled under the terms of the contract which were not in conflict with the statute.

The decision herein is contrary to law and for that reason the judgment is reversed. Since this is purely a question of law upon an agreed statement of facts the trial court is directed to enter a judgment in favor of the appellant and that the appellee take nothing by the complaint herein.

Curtis, J., concurs in result.